**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GO TO EXPRESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 23-cv-3180 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| **LONG ROAD TRANSPORTATION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Go To Express, Inc. ("Go To") brings this lawsuit against defendant Long Road Transportation, LLC ("Long Road") alleging that Long Road: (1) breached an agreement entered into by the parties related to freight shipping services; and (2) tortiously interfered with Go To's prospective business relationships. In turn, Long Road brings three counterclaims against Go To, alleging: (1) breach of the same agreement; (2) unjust enrichment; and (3) defamation.

The parties have each moved for partial summary judgment, (Dckt. ##45, 49), and together, their motions seek judgment on all of the claims and counterclaims before the Court. In particular, Go To seeks summary judgment on Long Road's defamation counterclaim, arguing, among other things, that its email communication to a third-party freight website was not defamatory, and that its email is protected under the qualified privilege even if it were otherwise defamatory. (Dckt. #45). Long Road, in turn, seeks summary judgment on all of the remaining claims—that is, its counterclaims for breach of contract and unjust enrichment, as well as Go To's claims for breach of contract and tortious interference. (Dckt. #49).

For the reasons set forth below, the Court finds that summary judgment on Long Road's defamation counterclaim is proper because Go To's email was capable of an innocent

construction and Go To has established the defense of qualified privilege. The Court also finds that summary judgment on Go To's tortious interference with prospective business relationships claim is proper because Go To has not put forth evidence identifying the specific business relationships at issue or that Long Road knew of Go To's business expectancy. Finally, the Court finds that Long Road is entitled to summary judgment on its breach of contract claim because Go To concedes that Long Road submitted additional documentation in support of its invoices, and the Court finds that the documentation was sufficient under the parties' contract.

Accordingly, Go To's motion for summary judgment on Long Road's defamation claim, (Dckt. #45), is granted; and Long Road's motion for summary judgment is granted with respect to Go To's tortious interference claim and the parties' breach of contract claims, (Dckt. #49). Because Long Road is entitled to full relief on its breach of contract claim, the Court denies as moot Long Road's motion for summary judgment on its related unjust enrichment claim.

## I.      LEGAL STANDARD

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). Where (as here), cross-motions for summary judgment have been filed, courts "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647 (7th Cir. 2016) (cleaned up).

## II.     REQUIREMENTS OF LOCAL RULE 56.1

Northern District of Illinois Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this District. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). To this end, Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) provides that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." LR 56.1(d)(2).

3

The non-moving party must then respond to the movant's statement of material facts. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). The response must consist of numbered paragraphs corresponding to the numbered paragraphs in the moving party's Local Rule 56.1 statement, and each response "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(1)-(2). "A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). Instead, if the opposing party wishes to assert facts not set forth in the moving party's Local Rule 56.1 statement, it may submit a statement of no more than forty additional material facts, which also must comply with Local Rule 56.1(d). LR 56.1(d)(2), (5).

Where the non-moving party fails to comply with Local Rule 56.1's requirements, the Court may exercise its discretion to accept the movant's properly supported statements of fact as undisputed. *See Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004); *Zehrung v. United Auto Workers Local 663,* 269 Fed.Appx. 585, 587 (7th Cir. 2008) (holding the district court did not abuse its discretion in deeming admitted the moving party's Local Rule 56.1 statement of facts when the non-movant failed to provide a proper Local Rule 56.1 response); *Daniels v. Janca*, No. 17 C 906, 2019 WL 2772525, at *2 (N.D.Ill. July 2, 2019) (collecting cases affirming the district courts' discretion to deem statements admitted when nonmovant fails to comply with the Local Rules).

**1.      Go To's Responses to Long Road's Local Rule 56.1 Statement of Facts Are Overall Deficient.**

Other than the twenty-four instances where it admitted Long Road's fact,[1] Go To responded to Long Road's Local Rule 56.1 statement in a myriad of ways.  As set forth below, nearly none were compliant with Local Rule 56.1's requirements.  *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("[D]istrict courts are entitled to expect strict compliance with Local Rule 56.1.").

On six occasions, Go To asserts that it "lacks sufficient evidence to admit or deny" a fact or that it "lacks knowledge or information sufficient" to respond.[2]  As other courts in this District have explained, "[t]his is not a proper ground to dispute a statement of fact." *Yost v. Chicago Park Dist.*, 17 F.Supp.3d 803, 805–06 (N.D.Ill. 2014).  Local Rule 56.1 provides that "in the case of any disagreement" with the moving party's statements of fact, the non-moving party must cite "specific references to the affidavits, parts of the record, and other support materials" as the basis for any disagreement.  LR 56.1(b)(3)(B).  A mere disagreement with the movant's asserted facts without specific reference is "inadequate." *Smith v. Lamz*, 321 F.3d 680, 683 (7th 2003).  The Court therefore deems admitted the six facts to which Go To stated that it lacked sufficient information to respond.  *See Fredricksen v. United Parcel Serv. Co.*, No. 06 C 2285, 2008 WL 904881, at \*2 n.3 (N.D.Ill. Mar. 31, 2008) ("Under the Local Rules of the Northern District of Illinois, a summary judgment response claiming insufficient information to admit or deny is improper and constitutes an admission.").

---

[1] *See* LRSOF Resp. ¶¶1–9, 11, 14–16, 24, 28–29, 35, 37–38, 41, 43, 46, 58, and 61.

[2] *Id.* ¶¶10, 12–13, 26, 36, and 42.

In nine instances, Go To admits or denies Long Road's proffered fact, then sets forth new facts within its response.[3] This too is improper. As set forth above, Local Rule 56.1 requires a litigant that opposes summary judgment to file a separate statement "of any additional facts that require the denial of summary judgment." LR 56.1(b)(3)(B). However, Go To decided not to file a statement of facts, and the Court will therefore not consider any additional facts included in Go To's response to Long Road's factual statement. *See Ammons*, 368 F.3d at 818 (7th Cir. 2004) ("In this case, several of Ammons' responses to Aramark's allegations admit to the allegation but then add other additional facts. These facts should have been included in a separate statement. They were not, and the district court did not abuse its discretion in striking the responses."); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 810 (7th Cir. 2005) (explaining a separate statement of additional facts is required if the non-moving party wants the court to consider its proposed facts when ruling on a motion for summary judgment).

In six instances, Go To denies Long Road's fact without citing supporting evidence.[4] This is in direct contradiction to the Local Rules, which require each response to be supported by citations to the evidentiary record. LR 56.1(b)(3)(B). Where the non-moving party "den[ies] a fact without reference to the record" the Court can "deem[] the original statement of fact admitted, to the extent that it offers admissible evidence and is supported by the movant's citation to the record." *Sears Home Appliances Showrooms, LLC v. Appliance All., LLC*, 328 F.Supp.3d 800, 804 n.3 (N.D.Ill. 2018) (citing *Lanz*, 321 F.3d at 683). The Court will therefore deem admitted Long Road's properly cited facts that Go To denied without making a citation to any supporting evidence.

---

[3] *Id.* ¶¶22–23, 30–31, 39–40, 44, and 47–48.

[4] *Id.* ¶¶17, 19, 27, 45, 55, and 57.

On at least four occasions Go To also denies a fact by citing a multi-page deposition or exhibit for support, e.g., "April 2021 Contract" or "Declaration of Lulu Salman."[5] These non-specific references to the evidence are insufficient under Local Rule 56.1. *See Ammons*, 368 F.3d at 817–18 ("Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate."). Accordingly, the Court also deems admitted the facts that Go To denied citing non-specific evidence.

In certain instances, Go To's responses also include legal conclusions either interpreting the Agreement or determining what conduct complies with the requirements of the Agreement.[6] It is "inappropriate to make legal arguments in a Rule 56.1 statement of facts." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008). Thus, these facts, too, will be deemed admitted where properly supported by Long Road.

Finally, Go To "objects" to certain facts that quote testimony because the facts do not also contain "some statement of what ultimate fact that testimony is intended to support."[7] In these seven instances, Go To "admits the testimony is accurate and denies the statement." There is no requirement in the Local Rules that citations to testimony must identify a separate statement of fact that the testimony is intended to support. *See* LR 56.1(a)(3) (explaining that the moving party's statement of facts can reference "affidavits, parts of the record, and other supporting materials"). Accordingly, the Court will deem admitted Long Road's facts that cite deposition testimony where the testimony properly supports the asserted facts.

In sum: nearly all of Go To's responses fail to properly dispute the facts asserted by Long Road. Therefore, the only question before the Court is whether Long Road, as the moving party,

---

[5] *Id.* ¶¶23, 29, 50, and 62.

[6] *Id.* ¶¶21–23.

[7] *Id.* ¶¶25, 32–34, 49, and 51–52.

properly supports its facts with citations to the evidentiary record. Where it does, the Court will deem these facts admitted.

## III.   FACTUAL RECORD

The Court draws the factual record from the parties' pleadings; Go To's statement of facts ("GTSOF") and its accompanying exhibits, (Dckt. ##47–47-5); Long Road's response to GTSOF, ("GTSOF Resp."), (Dckt. #53); Long Road's statement of facts ("LRSOF") and its accompanying exhibits, (Dckt. #51 to #51-13); and Go To's response to LRSOF ("LRSOF Resp.") and its accompanying exhibit, (Dckt. ##56 to 56-1). The following facts are undisputed unless otherwise noted.

### A.   The Parties and the Drayage Business.

Plaintiff/Counter-Defendant Go To is a freight broker. (LRSOF Resp. ¶6). Defendant/Counter-Plaintiff Long Road is a motor carrier that offers drayage services—that is, overland freight services focused primarily on short-distance transport—in the Puget Sound region of the State of Washington. (*Id.* ¶5). Long Road picks up containers from shipping vessels at the Ports of Tacoma and Seattle, delivers them to nearby destinations, then returns the empty containers to the ports. (*Id.* ¶9). Long Road also delivers loaded containers to seaports from nearby exporters for ocean transit. (*Id.*).

Before ocean shipping containers can be transported over the road, they must be placed on a chassis that is connected to a motor carrier tractor. (*Id.* ¶10). Chassis are either owned by the motor carrier (like Long Road) and leased to the shipper customer as part of the services the motor carrier provides, or leased by the motor carrier from a third-party owner. (*Id.*). Under either approach, there is an associated daily rental charge for the chassis. (*Id.*).

8

Additional charges related to drayage services can also arise when there are delays. (*Id.* ¶¶11–12). One category is a "per diem" charge, which is a daily charge implemented by steamship lines when containers are either delayed in being picked up or in being returned to port beyond a preset number of "free days." (*Id.* ¶11). The steamship line invoices the per diem charges to the drayage operator, who then transmits them to the broker to pay the steamship line directly. (*Id.*).

Another category is driver "wait time" or "detention" charges. (*Id.* ¶12). These delays occur due to congestion and logistical issues at ports, unavailability of equipment or dock space at the time deliveries are scheduled, and other circumstances beyond the driver's control. (*Id.*). Drivers charge the time they spend waiting or on standby, which is calculated by multiplying an hourly rate with the hours the driver waits before they are able to proceed with the transport. (*Id.*). The parties agree that "detention" refers to wait time at ports, as well as at customer facilities. (*Id.* ¶18).

### B. The Agreement Between Go To and Long Road.

One of the ways that freight brokers (like Go To) engage carriers (like Long Road) to transport cargo for the broker's customers is through websites like Loadmatch.com ("Loadmatch"), (*id.* ¶7), and Drayage.com ("Drayage"), (GTSOF Resp. ¶2).[8] Using Loadmatch and Drayage, brokers post available cargo loads that carriers then accept. (*Id.*).

---

[8] Several of Go To's "facts" do not comply with the requirements of Local Rule 56.1. For example, here, Go To cites its complaint rather than parts of the record to support its fact. This is contrary to the directives in Rule 56(c) and (e) and Local Rule 56.1(a) and (d), particularly given that Long Road did not admit this fact in its answer to Go To's complaint. Despite Go To's non-compliance with the Local Rules, Long Road did not object to this fact on that basis and admitted the fact, such that any objection is now waived. In this circumstance, and those similar, the Court will deem such facts admitted.

9

Relevant to this case, Long Road sourced several bookings from Go To using Loadmatch, and pursuant to an agreement entered into by the parties in April 2021 (the "Agreement"), Long Road ultimately moved freight containers from shipping ports to Go To's customers. (*Id.* ¶1; LRSOF Resp. ¶8). The Agreement was Go To's standard form that it used with its all of its customers. (LRSOF ¶14). The Agreement contemplates that Long Road will charge Go To certain "accessorial charges." (*Id.* ¶15).

In pertinent part, the Agreement provides:

13) Accessorial Charges. There shall be no charge for waiting time or demurrage other than as provided for in this paragraph. Carrier shall allow 2 hours of free time for loading and after that free time has expired, Broker shall pay for waiting at the rate of $25 per hour, but not to exceed a total of $200. Carrier shall allow 2 hours of free time for unloading and after that free time has expired, Broker shall pay for waiting time. In order to be eligible to receive payment for waiting time, Carrier must first furnish to Broker written proof of the time of arrival of the subject vehicle for loading/unloading and the time of completion of the loading/unloading on the Bill of Lading for the subject shipment, or other appropriate and acceptable (to Broker) shipping document. Time spent waiting prior to the time of opening for business of the consignor or consignee, as the case may be, shall not be included in the computation of either free time or waiting time. In order to receive paying for waiting time, Carrier must first give Broker telephone notice that chargeable waiting time is about to commence or accrue so that Broker has an opportunity to intervene with the consignor/consignee in order to avert or minimize such charges for waiting time. Appointments for loading and unloading are to be made at no additional charge. Waiting time incurred on account of Carrier's failure to keep its scheduled appointment for pick up or delivery shall not be charged to Broker or Broker's customer(s). Loads shall be held for delivery and/or re-delivery at no additional charge.

(Dckt. #51-4 at 6–7), ("Article 13").

Although the Agreement does not define the term "shipping documents," it further provides:

8) Submission of Documents/Claims. Carrier shall submit to Broker all shipping documents within fifteen (15) days after delivery of each shipment transported pursuant to this Agreement and Broker shall pay Carrier for each shipment tendered pursuant to this Agreement the agreed compensation within twenty-five (25) days after receipt by Broker of Carrier's freight bill with attached original Bill of Lading

(or a readable copy thereof), without exception or notation, signed by the consignee at point of delivery as proof of delivery of the shipment, on time, on schedule and in good order and condition. Carrier compensation to be paid under this Agreement may be withheld by Broker, in whole or in part, to satisfy claims for loss, damage or delay to shipments transported by Carrier pursuant to this Agreement.

(*Id.* at 5), ("Article 8").

### C. Dispute Regarding Long Road's Invoices.

Long Road issued invoices to Go To between February 2022 and August 2022, and Go To paid them. (LRSOF Resp. ¶¶39–40). During this time, Long Road submitted documentation to Go To, including (1) "port tickets" that documented the dates and times that Long Road received and delivered containers, including the time that Long Road provided a chassis rental for Go To's customers, (*id.* ¶42); (2) invoices that detailed the dates, times, and number of hours that Long Road's truckers spent in "detention" or "waiting," (*id.* ¶43); and (3) invoices that detailed the number of days that Go To's containers were delayed at port beyond the "free days" permitted by the steamship lines, (*id.* ¶11). Go To paid Long Road's invoices during these months, (*id.* ¶54), and in some instances, indicated that Long Road was "sending more attachments than what [was] needed," (Dckt. #51-12 at 2).

In the fall of 2022, Long Road sent Go To a series of additional invoices. (GTSOF Resp. ¶4). Around this same time, the parties were negotiating an agreement that was largely similar to the Agreement signed in April 2021, but contained additional language regarding Long Road's obligations to "advise" Go To before it incurred additional charges. (*Id.* ¶¶1, 3; Dckt. #4 at 32). Go To agreed that the Agreement dated April 2021 required written documentation to support invoicing, but "wanted to clarify exactly what that documentation was and so [Go To] specified it more clearly in the second contract." (LRSOF ¶30). None of the invoices that were previously

11

sent by Go To and are at issue in this lawsuit were subject to the second contract. (LRSOF Resp. ¶¶39–40).

When Long Road submitted its invoices in the fall of 2022, Go To withheld a portion of its payment based on Go To's belief that certain charges lacked the proper documentation. (GTSOF Resp. ¶4). The charges at issue include chassis rental fees, per diem charges, and detention charges. (LRSOF Resp. ¶¶38, 40). Go To does not contest that Long Road is allowed to charge Go To detention charges, chassis rental charges, or the steamship line per diem charges. (*Id.* ¶50). In fact, as early as January 19, 2022, Long Road issued Go To a rate sheet setting forth charge rates for chassis and standby time. (*Id.* ¶37). Go To only resists payment based on its belief that these charges are not properly documented. (*Id.* ¶50).

Based on its concerns with Long Road's fall 2022 invoices, Go To conducted an audit of other invoices from earlier in 2022, and concluded that Long Road either overcharged Go To or failed to provide the necessary paperwork to justify certain charges. (GTSOF Resp. ¶5). Ultimately, it is Go To's position that it overpaid Long Road by $304,812.40. (*Id.* ¶12; LRSOF Resp. ¶53). Go To reached out to Long Road to either refund the amount by which Go To believed it had overpaid, or alternatively, to provide documentation that would support the charges in question. (GTSOF Resp. ¶7). At least 90% of Long Road's detention invoicing at issue between the parties related to wait times at ports (i.e., not at the facilities of Go To's customers). (LRSOF Resp. ¶¶19, 24).

Long Road, for its part, asserts that it was not required to provide additional documentation under the terms of the Agreement, and that Go To's partial payment of certain invoices has resulted in a $107,701.05 shortfall owed to Long Road for its drayage services, accessorial charges, and per diem charges. (LRSOF ¶45).

### D. Communications with Drayage Website Operators.

On or around November 7, 2022, Paul Lascault ("Lascault"), the chief executive officer of Long Road, contacted Jason Hilsenbeck ("Hilsenbeck"), an employee of Drayage, and stated that Go To failed to timely pay its carriers, and that Go To owed Long Road money. (LRSOF ¶58; GTSOF ¶¶8–9). At the time he made this statement, Lascault did not inform Hilsenbeck that Go To disputed certain charges. (GTSOF ¶9).

About a month later, on December 6, 2022, Hilsenbeck reached out to Go To via email, stating:

> I received [the] complaint below from Long Road/Seattle who says Go To Logistics/Go To Express hasn't paid $111,164? See email below. Until I hear things have been resolved with this trucker, I have disabled your log in [to drayage.com]. If you work things out with Long Road, let me know and we'll remove the negative review. If I don't get a response by Friday evening, the complaint will be made public on your profile and Go To Logistics will be placed on the list of companies that doesn't pay container truckers.

(*Id.* ¶10).

> Go To responded two days later on December 8, 2022, as follows:

> In fact, based on the documentation we have, we overpaid a net of $304,812 during 2022. See the table below that was provided to Long Road with a list of missing documentation needed for each invoice included in these totals on November 15, 2022. To date we have not received any further documentation supporting the amounts charged that we ultimately overpaid.

(*Id.* ¶12).

## IV. DISCUSSION

The parties each move for summary judgment. The Court addresses their arguments below starting with Long Road's motion and ending with Go To's motion. As set forth above, the Court will "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Calumet River Fleeting, Inc.*, 824 F.3d at 647.

**A. Long Road Is Entitled to Summary Judgment on Its Breach of Contract Claim.**

**1. Long Road Has Submitted Documentation to Support Its Invoices That Complies with the Agreement.**

The parties bring mirror breach of contract claims, each arguing that the other breached the Agreement.

Where the facts are undisputed, breach is a question of law for the trial court to determine. *Furry v. U.S.*, 712 F.3d 988, 992 (7th Cir. 2013); *Adams v. N. Ill. Gas Co.,* 809 N.E.2d 1248, 1257 (2004) ("the issues of breach and proximate cause are factual matters for a jury to decide, provided there is a genuine issue of material fact regarding those issues") (cleaned up).

Once again, the Agreement provides that:

> Carrier shall allow 2 hours of free time for loading and after that free time has expired, Broker shall pay for waiting at the rate of $25 per hour, but not to exceed a total of $200. Carrier shall allow 2 hours of free time for unloading and after that free time has expired, Broker shall pay for waiting time. In order to be eligible to receive payment for waiting time, Carrier must first furnish to Broker written proof of the time of arrival of the subject vehicle for loading/unloading and the time of completion of the loading/unloading on the Bill of Lading for the subject shipment, or other appropriate and acceptable (to Broker) shipping document. . . .

(Dckt. #51-4 at 6–7). Article 8 requires that Long Road submit "shipping documents within fifteen (15) days after delivery of each shipment." (*Id.* at 5).

The parties agree that Long Road can invoice Go To for chassis rental fees, per diem charges, and wait time under the Agreement. Long Road argues that the Agreement does not require any "backup" for detention, chassis rental, and other accessorial charges. (Dckt. #50 at 2). That position is not supported by the language of the Agreement itself, which through Articles 8 and 13 clearly refers to "shipping documentation." Thus, the only issue before the

14

Court is whether Long Road has submitted sufficient documentation to support its invoices under the Agreement. The record reflects that it has.

Long Road submitted "port tickets" and other documentation to support its chassis rental charges, which specify whether a chassis was used, the chassis number, and the rental rate. (LRSOF ¶43, Dckt. #51–9). In support of its detention charges, Long Road submitted Bills of Lading and logs that documented the days and times that Long Road received and delivered loaded and empty containers. (LRSOF ¶42). With respect to the per diem charges, Long Road provided invoices identifying the number of "free" days, and the number of per diem days to be billed. (LRSOF ¶11, Dckt. #51-5).

Go To concedes that Long Road provided this documentation, but takes issue with the type of documentation that Long Road has submitted. Go To argues the shipping documents must be "bill of lading, full ticket, empty ticket, gate tickets, and/or proof of delivery." (Dckt. #55 at 3). This argument fails for several reasons.

First, Article 13 of the Agreement provides that a Bill of Lading is sufficient to support detention fees, and Go To concedes that Long Road has submitted Bills of Lading in support of its charges. (LRSOF ¶43).

Second, the other documentation submitted by Long Road is likewise sufficient under the Agreement. The Agreement is Go To's standard form contract, and it is silent as to whether specific "shipping documents" are required to support accessorial charges. Although "shipping documentation" is undefined, it is clear from Article 13 that the purpose of the shipping documentation is to substantiate the accessorial charges Long Road invoices by indicating arrival and departure times, dates of movement, and hours spent waiting. It is also clear that the port tickets and invoices submitted by Long Road expressly serve this purpose. They specify, among

15

other things, the dispatch number, load number, rental and detention rates, dates and times of any movement, container number, chassis number, number of free days permitted by the steamship lines, and number of "per diem" days to be charged. (*See* Dckt. ##51-5, 51-9). Contrary to Go To's contention then, it is hard to imagine what additional information Go To requires to substantiate these claims under the Agreement,[9] and the text of the Agreement does not support Go To's argument that the documentation must be "full ticket, empty ticket, gate tickets, and/or proof of delivery." Accordingly, Go To's objection to the form of Long Road's "shipping documentation" is insufficient to raise a genuine issue of material fact to survive summary judgment.[10] The Court therefore grants summary judgment in favor of Long Road on its breach of contract claim, and for the same reason, grants Long Road's motion for summary against Go To on Go To's breach of contract claim.

### 2. The Parties' Remaining Arguments Regarding the Contract Claim Are Immaterial.

The parties raise several additional arguments related to their respective breach of contract claims, including whether the invoices are governed by the Interstate Commerce Commission Termination Act, and whether the parties' course of dealing and/or Go To's email signature block modified the terms of the Agreement. These arguments are immaterial in light of the Court's finding that Long Road's invoices were supported by documentation sufficient to grant summary judgment in its favor. Accordingly, the Court does not—and indeed, need not—

---

[9] Indeed, during the course of the parties' relationship, Go To complained to Long Road that Long Road had submitted "more" documentation than Go To needed. (Dckt. #51-12 at 2).

[10] To the extent Go To argues that more specific documentation was required based on the second contract negotiated between the parties in the Fall of 2022, that argument fails. The second contract was not agreed to when the relevant invoices were issued and therefore does not govern them. (LRSOF ¶40).

16

reach these arguments.  (*See e.g.,* Dckt. #50 at 9 (explaining that modification is an alternative argument if the Court does not accept Long Road's interpretation of the Agreement)).

### 3.    Long Road Is Entitled to Summary Judgment on Go To's Affirmative Defense/Counterclaim of Setoff.

In response to Long Road's breach of contract claim, Go To argues that it is entitled to "setoff" of the amount it allegedly owes to Long Road ($107,701.05) by the amount Go To claims it has overpaid ($304,812.40).  The parties dispute whether Go To was required to raise its right to a setoff in its complaint or as an affirmative defense in its answer.  But this Court need not resolve whether setoff must be pleaded as an affirmative defense or in a counterclaim because even assuming Go To can proceed,[11] its setoff counterclaim/defense would fail because it is based on Go To's supposed overpayment to Long Road under the Agreement.  Go To's overpayment argument is, in turn, based on its argument that Long Road did not provide sufficient documentation pursuant to the Agreement to support its own invoices.  However, as explained above, the Court has rejected Go To's argument.  Consequently, because Long Road has submitted documentation that complies with the Agreement to support its invoices, Go To's overpayment argument lacks factual support in the record, and its setoff argument therefore fails as a matter of law.

---

[11] *See Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005) (finding the plaintiff was not prejudiced by the affirmative defense of setoff because he was aware of the defense when he filed his complaint and confronted the defense in responding to the summary judgment motion); *see also Lock Realty Corp. IX v. U.S. Health, L.P.*, No. 3:06-CV-487RM, 2009 WL 2970330, at *15 (N.D.Ind. Sept. 14, 2009), *aff'd sub nom. Lock Realty Corp. IX v. U.S. Health, LP*, 707 F.3d 764 (7th Cir. 2013) (permitting the defendants to assert a late-filed claim for setoff where the plaintiff had "the opportunity to respond to the defendants' setoff argument in reply to its motion for summary judgment").

**B.      Long Road Is Entitled to Summary Judgment on Go To's Interference with Business Expectancy Claim.**

Go To alleges that Long Road made false statements to Hilsenbeck, which interfered with Go To's access to the Drayage website and its ability to obtain business through Drayage. (Dckt. #15 ¶17).   To prevail on a claim for interference with business expectancy, Go To must show: "(1) [it] had a reasonable expectancy of entering into a valid business relationship, (2) [Long Road] knew of the expectancy, (3) [Long Road] intentionally and unjustifiably interfered with the expectancy, inducing or causing a breach or termination, and (4) [Go To] suffered damage as a result." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 145 F.4th 675, 681 (7th Cir. 2025) (cleaned up).  The parties limit their arguments to the first and second elements, and therefore, so does the Court.

Long Road first argues that Go To has not put forth evidence to support the first element of its claim because Go To has not identified any specific third party that was considering entering into a business relationship with Go To but failed to do so after its login to Loadmatch was disabled on December 6, 2022.  Go To responds—through an affidavit attached to its response brief—that after its login was suspended, it "could not retain carriers to carry loads, and therefore had to reject jobs/loads" from its customers Expolanka, Home Depot, and Firestone Tires.  (Dckt. #55-1 at 2).  While evidence to support this assertion could be sufficient to raise a potential issue of fact, the problem for Go To is no such evidence is properly in the record before the Court.

As set forth above, if the opposing party wishes to assert facts not set forth in the moving party's Local Rule 56.1 statement, it must submit a statement of additional material facts, which must, in turn, comply with Local Rule 56.1(d).  LR 56.1(d)(2), (5).  Here, Go To elected not to file a statement of additional facts, yet it now seeks to rely on additional facts—namely, the

18

identities of specific third parties that did not enter into a business relationship with Go To—to avoid summary judgment on its tortious interference claim. But, as the Seventh Circuit has "repeatedly held[,] . . . a district court is entitled to expect strict compliance with Rule 56.1." *Ammons*, 368 F.3d at 817 (collecting cases); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (explaining the Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1"). Therefore, this Court will not consider the affidavit attached to Go To's response brief because it is outside the parties' Local Rule 56.1 statements, *see Ammons*, 368 F.3d at 817; *see also Collins v. Amazon.com Servs. LLC*, No. 24-CV-04964, 2026 WL 445932, at *4 (N.D.Ill. Feb. 17, 2026).

In any event, even if this Court were to consider the evidence presented in Go To's improperly submitted affidavit, Long Road would still be entitled to summary judgment because Go To cannot demonstrate another element of its claim—namely, that Long Road knew of Go To's business expectancy with Expolanka, Home Depot, and Firestone Tires.

Go To's effort to present evidence on this point also falls short. To begin, Go To does not identify any evidence showing that Long Road was aware of its business expectancy with Expolanka or Firestone. With respect to Home Depot, Go To points to an alleged message Long Road sent to a group of truckers at an unknown time, stating "the agenda is our plan to put an appreciable pressure on Go2 through LoadMatch, ports and Home Depot." (Dckt. #55 at 7). The provided citation for this email is simply "Def.'s Discovery Response, LONG_ROAD_0169." (*Id.*). Yet, this message purportedly sent by Long Road is not referred to in either party's Local Rule 56.1 statement, is not attached to either party's Local Rule 56.1 statement, and, other than being referenced in Go To's response brief, seemingly has not been

19

submitted to the Court in any form.  Accordingly, the Court will disregard this fact.  *Ammons*, 368 F.3d at 817; *Collins*, 2026 WL 445932 at *4.[12]

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (cleaned up).  Accordingly, "[a] party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.'"  *Caisse Nationale de Credit v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).  Here, however, Go To has failed to put forth evidence on which a reasonable jury could conclude either that Go To had a reasonable expectancy of entering into a valid business relationship or that Long Road knew of Go To's business expectancy.  As a result, Long Road's motion for summary judgment on the interference with business expectancy claim is therefore granted.

### C.    Long Road's Unjust Enrichment Claim Is Denied as Moot.

Long Road argues that even if the Court denies summary judgment on its breach of contract claim, it is nonetheless entitled to summary judgment on its unjust enrichment claim. (Dckt. #50 at 4).  Because the Court has granted full relief in Long Road's favor on its breach of contract claim, its unjust enrichment claim is moot.  *See Days Inns Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F.Supp.2d 770, 783 (N.D.Ill. 2007) ("[S]ince we have granted DIW's motion for summary judgment on all of its breach of contract claims, DIW's unjust enrichment claim is dismissed as moot since DIW has been provided with a recovery on its breach of contract causes of action."); *ShopLocal LLC v. Cairo, Inc.*, No. CIV.A. 05 C 6662, 2006 WL 495942, at *2 (N.D.Ill. Feb. 27, 2006) (explaining that "[i]f an unjust enrichment claim is

---

[12] It does not appear that either party presented a copy of LONG_ROAD_0169 in support of its submission.  Nor does it appear that a copy of LONG_ROAD_0169 is otherwise on the docket.  Thus, Go To once more attempts to rely on alleged "facts" that are not in the record to defeat summary judgment.

predicated on a contract, a plaintiff may not recover for both unjust enrichment and breach of contract").

### D. Go To Is Entitled to Summary Judgment on Long Road's Defamation Claim.

Long Road alleges that Go To's December 8, 2022 email communication about Long Road to Hilsenbeck, an employee at Drayage, is actionable as both defamation *per se* and defamation *per quod*. Go To's email stated:

> In fact, based on the documentation we have, we overpaid a net of $304,812 during 2022. See the table below that was provided to Long Road with a list of missing documentation needed for each invoice included in these totals on November 15, 2022. To date we have not received any further documentation supporting the amounts charged that we ultimately overpaid.

(GTSOF ¶12).

"A defamatory statement is a statement that harms a [party's] reputation to the extent it lowers the [party] in the eyes of the community or deters the community from associating with [the party]." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Under Illinois law, the elements of a defamation *per quod* and defamation *per se* actions are "that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green*, 917 N.E.2d at 459. The two types of defamation claims differ only with respect to the plaintiff's burden to plead and prove damages. In a defamation *per se* action, damage to a corporate plaintiff is presumed if the statement impugns the plaintiff's competence or integrity, or otherwise prejudices the plaintiff in its business. *See Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012). In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed and the plaintiff must plead and prove special damages. *Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008).

21

      **1. Go To Is Entitled to Summary Judgment on Long Road's Defamation *Per Se* Claim Because Go To's Statements Were Capable of an Innocent Construction.**

As an initial matter, Go To argues that its email to Hilsenbeck on December 8, 2022, which stated, "In fact, based on the documentation we have, we overpaid a net of $304,812 during 2022. . . . To date we have not received any further documentation supporting the amounts charged that we ultimately overpaid," is not defamatory. (Dckt. #46 at 4). The Court agrees.

Under Illinois law, it is "well settled that, even if an alleged statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable per se if it is reasonably capable of an innocent construction." *Kapotas v. Better Govt. Ass'n*, 30 N.E.3d 572, 591 (Ill.App.Ct. 2015) (cleaned up). The Seventh Circuit recently described the innocent construction rule as follows:

> The innocent construction rule applies when a defamatory statement "may reasonably be innocently interpreted. This preliminary determination is a question of law to be resolved by the court. . . ." If there is no innocent construction, the remaining question for the jury is "whether the statement was in fact understood to be defamatory." In making a reasonable construction determination in the first instance, a court "must give the allegedly defamatory words their natural and obvious meaning" and interpret them "as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader." Finally, "if a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail.

*Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 551 (7th Cir. 2025).

Courts are clear that statements that another party was overpaid are capable of innocent construction, particularly where, like here, they are "made in a confined setting with a limited audience" for a purpose other than to defame the other party. *See, e.g.*, *Pompa v. Swanson*, 990 N.E.2d 314, 320 (Ill.App.Ct. 2013) (holding statement that plaintiff was overpaid made in the context of a union board meeting specifically set to consider whether plaintiff should receive a

retirement gift was capable of innocent construction);[13] *see also Kapotas*, 30 N.E.3d at 592 (holding statement that a doctor was overpaid $80,000 while on leave was capable of an innocent interpretation where the article could be reasonably construed as reporting an incident).

Here, Go To's December 8, 2022 email stating that it overpaid Long Road—an email sent only to Drayage, in response to an inquiry initiated by Drayage, for the purpose of informing Drayage of Go To's business position—is capable of an innocent construction. *See Conner v. Harrah's Operating Co., Inc.*, No. 3:08-cv-633-RCJ-RAM, 2010 WL 11639692, at *3 (D.Nev. Feb. 22, 2010) ("[M]erely informing someone that he has been overpaid is not defamatory as a matter of law."); *Taylor v. United States*, No. 7:00-cv-268-FL, 2012 WL 5928269, at *4 (E.D.N.C. Nov. 26, 2012) (holding letter that plaintiff had been overpaid did not impute dishonesty on plaintiff and therefore was not actionable as defamation *per se*). The Court thus grants Go To's motion for summary judgment as to Long Road's defamation *per se* claim.

### 2. Go To Is Entitled to Summary Judgment on Long Road's Defamation Claim Because the Qualified Privilege Applies.

Summary judgment is also proper if Go To can establish one of a number of affirmative defenses that apply to both defamation claims under Illinois law, including qualified privilege. *Phillips v. Quality Terminal Servs., LLC*, 855 F.Supp.2d 764, 789 (N.D.Ill. 2012) (citing *Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986)). A qualified privilege "is based on a policy of protecting honest communications of misinformation in certain favored circumstances in order to facilitate the availability of correct information." *Dent v. Constellation NewEnergy, Inc.*, 202 N.E.3d 248, 256 (Ill. 2022) (cleaned up).

---

[13] As *Pompa* points out, even if an allegedly defamatory statement is not capable of innocent construction, it may still be protected as an expression of opinion. *Pompa v. Swanson*, 990 N.E.2d 314, 320 (Ill.App.2d 2013) (holding, in the alternative, that statement that plaintiff was overpaid was opinion as opposed to fact). Here, Go To's statement that it had overpaid Long Road was its opinion at the time it responded to Drayage, not fact.

One of Go To's principal arguments on Long Road's defamation claim is that qualified privilege applies. Because the Court finds that qualified privilege applies, and qualified privilege is an affirmative defense to defamation, the Court need not—and does not—reach the parties' remaining arguments.

Whether a qualified privilege exists is a question of law for the court. *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Qualified privilege can exist "as a matter of law where the following elements are present: (1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Kuwik*, 619 N.E.2d at 133.

Here, each element is met. Go To limited its statement to only one email, made in response to an inquiry initiated by Hilsenbeck, for the purpose of explaining its good faith belief in its business relationship with Long Road, in response to Hilsenbeck's inquiry. The Court finds this is proper. Indeed, in its reply brief, Long Road asserts it was "entirely justified in communicating its experience [with Go To] to the industry [including Drayage]." (Dckt. #57 at 1). It is thus also true that Go To was entirely justified in responding to Drayage's inquiry (which was initiated by Long Road's statements) with its position and belief as to the payments between the parties. Ultimately, Long Road does not argue that Go To failed to demonstrate any of the specific factors above, and the Court otherwise finds that Go To has established the qualified privilege.

Because the qualified privilege has been established, Long Road can only proceed on its claim if it can show that the privilege was abused. *Phillips,* 855 F.Supp.2d at 790. That is, Long Road must show Go To abused the privilege by intentionally publishing false material or by

24

displaying a "reckless disregard" as to its truth or falsity—meaning that the defendant "entertained serious doubts about the truth of the statement but failed to properly investigate the truth." *DePinto v. Sherwin-Williams Co.,* 776 F.Supp.2d 796, 804 (N.D.Ill. 2011).

Here, Long Road argues that Go To abused the privilege because the statement that Go To overpaid Long Road was untrue, Go To knew it was untrue, and Go To published it with reckless disregard of the consequences to Long Road. (Dckt. #52 at 9). But Long Road has presented no evidence that Go To abused the qualified privilege, either by intentionally making false statements or by acting with "reckless disregard" as to the truth of its statements. Go To asserts that it believed and, in fact, still believes that the statements in its email to Hilsenbeck that it overpaid Long Road and was awaiting further documentation are true, and nothing in the record raises an issue of fact as to whether, at the time the statements were made in December 2022, Go To lacked good faith or had doubts about whether it had overpaid Long Road. Moreover, although it found that Long Road submitted sufficient documentation to support its invoices, the Court notes that the Agreement does not define "supporting documents," which leaves room for a good faith (even if mistaken) view about what "supporting documents" means.

For these reasons, Long Road has failed to present sufficient evidence to show that Go To abused its qualified privilege. Long Road's defamation claim therefore cannot survive Go To's motion for summary judgment. *See, e.g.*, *Tamburo v. Dworkin*, 974 F.Supp.2d 1199, 1215 (N.D.Ill. 2013) (granting summary judgment on defamation claim where plaintiff failed to put forth evidence to show an abuse of the applicable qualified privilege); *Anglin v. Sears Roebuck & Co.,* No. 93 C 3438, 1998 WL 483524, at *8 (N.D.Ill. Aug. 10, 1998) ("[A]buse of a qualified privilege cannot simply be asserted to defeat a motion for summary judgment. Plaintiff has the burden to provide sufficient evidence to create a genuine issue of material fact; absent such

evidence, summary judgment is appropriate.").  Accordingly, Go To's motion for summary judgment on Long Road's defamation claim is granted.

<strong>CONCLUSION</strong>

For the foregoing reasons, Go To's motion for partial summary judgment on Long Road's defamation claim, (Dckt. #45), is granted.  Long Road's motion for partial summary judgment is granted in part as to plaintiff's interference with business expectancy claim and the parties' breach of contract claims, (Dckt. #49).  Long Road's motion for partial summary judgment on its unjust enrichment claim is denied as moot.

**Date: March 27, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**

26